IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
PEORIA DIVISION

| | |
|---|---|
| JUSTIN YANG, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 1:23-cv-1410 |
| ) | |
| JULIETTE HARRIS and EAST PEORIA ) | |
| THE BOARD OF TRUSTEES OF THE ) | Plaintiff demands trial by jury. |
| COMMUNITY HIGH SCHOOL DISTRICT ) | |
| 309, ) | |
| ) | |
| Defendants. ) | |

## COMPLAINT

Plaintiff, Justin Yang, by and through his attorneys, JULIE L. GALASSI, BRYANT S. LOWE and HASSELBERG, ROCK, BELL & KUPPLER, LLP, states the following for his COMPLAINT:

## PARTIES

1. Plaintiff, Justin Yang ("Yang"), resides in Peoria County, Illinois.

2. Defendant, the Board of the Trustees of the East Peoria Community High School District 309 ("District 309"), is located in Tazewell County, Illinois.

3. Defendant, Juliette Harris ("Harris"), resides in Tazewell County, Illinois.

## JURISDICTION AND VENUE

4. This Court has subject matter jurisdiction over Count I of this matter pursuant to 42 U.S.C. 1983.

5. This Court has supplemental jurisdiction over Counts II and III of this matter pursuant to 28 U.S.C. 1367.

6. The Central District of Illinois is the proper venue for this matter pursuant to 28 U.S.C. 1391(b)(1) and (2), because the Defendants reside or are located in Tazewell County and a substantial part of the events giving rise to Yang's claims occurred in the Central District of Illinois, Peoria Division.

## FACTUAL ALLEGATIONS

7. District 309 hired Yang as an English Language Arts teacher on August 9, 2017.

8. Prior to December 2022, Yang's evaluations had been above average or excellent such that he was granted tenure in 2020. Yang's evaluations included his superiors observing his classes for the curriculum taught and Yang's interactions with students.

9. In December 2022, Harris was a student in Yang's first period class. Harris often requested to stay in Yang's classroom during second period when she was scheduled for study hall and Yang had a free period. Harris confided to Yang details about her home life that troubled her. Yang tried to be supportive of her. After Yang noticed that Harris' desire to stay in his classroom during her study hall period were becoming too frequent, Yang refused her daily requests as her presence was interfering with his assignment preparation and other teaching duties.

10. Previously, in November 2022, Yang had allowed Harris to use his "buddy pass" with Allegiant Airlines, with Harris' mother's permission, because

Harris wanted to visit with her brothers in Las Vegas over Thanksgiving. Yang worked part-time for the airline. Having a buddy pass meant the flight was subject to cancellations and being on standby. Harris gave Yang her cell phone number in the event he was notified of a change in the flight schedule.

11.  On or about December 7, 2022, Yang was called to Marjorie Grueter's office. Grueter was the superintendent for District 309. Yang was told he had been accused of inappropriate communications with students. Yang was first accused of writing "Dem Sum Bitches" on the blackboard. Yang explained that in discussing stereotypes in an AP class a student had written the words and Yang erased it. Yang was accused of sending a student a GIF of a naked man. Yang said that was untrue, he had sent the student a GIF of a male wrestler based on their discussions about wrestling. Yang was finally accused of telling a student to "kick me in the balls." Yang admitted that he had been corrected by a transgender student several times for saying "she" instead of "he." Yang said he had stated for the student to kick him in the balls if he said "she" instead of "he." As a result, Grueter issued Yang a letter of reprimand. Harris was the individual who reported the alleged inappropriate communications to Grueter.

12.  A few days later, Harris went to Principal Brown with more allegations against Yang. Harris asked and accompanied other students to make false complaints about Yang. Those complaints consisted, in part, of the following:

   a. Harris said Yang would talk during second period about his wife not wanting him sexually anymore.

b. Harris said she was nervous because what Yang had said and done was inappropriate, creepy and made her uncomfortable to be in the room with him.

c. Yang had told a female student her mother was "hot" after seeing a picture of the two of them together.

d. Yang stated to two female students "did you just grab each other's boob?"

e. Yang was frequently seen one on one with female students and he had other student's phone numbers.

f. Yang told a female student she looked "hot" in the dress she was wearing.

g. Yang said to a female student he wanted to "bang" other people's moms.

h. A student observed Yang talking to two female students and he was freaked out and really sweaty.

i. Yang told a female student who was a witch on the homecoming float that she was "hot."

j. Yang told a male student he should have slept with his girlfriend while they were together.

13. On December 12, 2022, Yang went to Grueter because Harris had been posting on Instagram that he was a pedophile. Grueter said that she had heard from other students but never elaborated what the details of those communications were.

She informed Yang that she intended to speak with the District's attorney later and expected him to go before the Board for termination unless he resigned.

14.     Sometime after Grueter's meeting with Yang, Grueter had a conversation with Yang's union representative about the meeting that was to take place the following day.

15.     On December 13, 2022, Yang met with Grueter. Before the meeting started, Yang's union representative told Yang she was not representing him and he needed to get a criminal attorney. The union representative also told Yang he needed to resign fast so there would be no record.

16.     Yang signed the resignation letter Grueter handed him on December 13, 2022 after he was told he was being suspended.

17.     Before Yang's wife was scheduled to come home for work on December 13, 2022, she telephoned him. Yang's wife accused him of grooming minor students and being forced from the school by police. Yang's wife promptly left the marital home with their children and refused to allow him any contact with his children.

18.     Within a week of December 13, 2023, Yang's wife filed a petition for dissolution of marriage. In January 2023, Yang's wife filed a pleading in the divorce proceedings alleging that Yang had resigned as a result of an investigation related to one or more acts of abuse Yang committed against minor children in his care and control. The pleading also references a report submitted by Grueter to the Illinois Board of Education about Yang's abuse which only included acts of grooming.

19. As a result of the false abuse allegations, Yang's contacts with his children were strictly supervised for a lengthy period of time.

20. Grueter never told Yang about the allegations listed in Paragraph 12. The allegations are false.

21. Grueter's letter to the Board of Education stated, in part, that Yang had been grooming individuals (minor students) and his behavior would have eventually led to physical relationships.

## COUNT I

## VIOLATION OF YANG'S DUE PROCESS RIGHTS BY DISTRICT 309

22. Yang realleges and incorporates paragraphs 1-22 into Count I.

23. Yang had a property interest in his continuing employment with the District by virtue of 105 ILCS 5/34-85 which provides Yang could only be removed from his employment for cause.

24. 42 U.S.C. 1983 provides that

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress…42 U.S.C. 1983.

25. The Fourteenth Amendment to the United States Constitution states that "[n]o State shall… deprive any person of life, liberty, or property, without due process of law…" U.S. Const. amend. XIV, § 1.

6

26. District 309 deprived Yang of his property interests without due process.

27. District 309 failed to inform Yang of the allegations against him listed in paragraph 12, so he would have the opportunity to refute the charges before being suspended in violation of the District's Professional Personnel policy 5:240.

28. District 309 coerced Yang's resignation by terminating Yang without the benefit of any pre or post deprivation hearing.

29. As a direct and proximate cause of the aforementioned acts of the Board and its agents, Yang, suffered tangible and intangible losses.

WHEREFORE Plaintiff, JUSTIN YANG, respectfully requests that this Court enter judgment in his favor and against Defendant, BOARD OF TRUSTEES OF THE EAST PEORIA COMMUNITY HIGH SCHOOL DISTRICT 309, and grant the following relief:

    A. compensatory damages;

    B. damages for emotional distress; and

    C. attorney's fees, interest, costs and such further relief as the Court deems just and equitable.

### PLAINTIFF DEMANDS TRIAL BY JURY.

### COUNT II

### DEFAMATION BY DEFENDANT HARRIS

30. The statements made by Harris are false.

31. Harris' false and defamatory statements were made and published without a recognized privilege.

32. Harris' false statements assert facts, not opinions. As such, they cannot

be characterized as mere hyperbole. They do not constitute loose or configurative language. No reasonable person could reasonably believe that Harris' false statements assert opinion, hyperbole, or figurative language.

33. Harris' statements cannot reasonably be subjected to an innocent construction.

34. Harris' false statements constitute defamation per se under Illinois law. Because of the nature of the statements, damage to Yang's personal and professional reputation is presumed.

35. Harris acted with actual malice in making the statements because Harris knew that her statements were false or acted with a reckless disregard of whether the statements were false or not.

36. The false statements were made and published by Harris with actual malice and ill-will towards Yang.

37. Harris' false and defamatory statements constitute willful, wanton, malicious, and intentional misconduct which justifies an award of punitive damages to punish Harris, and to deter others from similar egregious wrongdoing.

WHEREFORE Plaintiff, JUSTIN YANG, respectfully requests that this Court enter judgment in his favor and against Defendant, JULIETTE HARRIS, and grant the following relief:

A. To award Yang compensatory and punitive damages in excess of $250,000.00.

B. To award Yang such other or further relief as is just and equitable in

the circumstances.

PLAINTIFF DEMANDS TRIAL BY JURY.

COUNT III

INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS BY HARRIS

38. Yang realleges and incorporates paragraphs 1-38 into Count III.

39. Harris' conduct described herein was extreme and outrageous.

40. Harris intended to cause Yang emotional distress and/or recklessly disregarded the probability that her actions would cause Yang emotional distress.

41. Yang suffered severe and/or extreme emotional distress.

42. Yang's emotional distress was proximately caused by Harris' outrageous conduct in accusing him of being a pedophile.

43. Based upon the foregoing, Harris is liable for the Illinois common law tort of intentional infliction of emotional distress.

WHEREFORE Plaintiff, JUSTIN YANG, respectfully requests that this Court enter judgment in his favor and against Defendant, JULIETTE HARRIS, and grant the following relief:

A. To award Yang compensatory and punitive damages in excess of $250,000.00.

B. To award Yang such other or further relief as is just and equitable in the circumstances.

PLAINTIFF DEMANDS TRIAL BY JURY.

9

Justin Yang,
   Plaintiff,

By: *Julie L. Galassi*
JULIE L. GALASSI
BRYANT S. LOWE
HASSELBERG, ROCK, BELL & KUPPLER, LLP
Associated Bank Building, Suite 200
4600 N. Brandywine Drive
Peoria, Illinois 61614
Tel:  (309) 688-9400
Fax:  (309) 688-9430
Email:  jgalassi@hrbklaw.com
        blowe@hrbklaw.com