IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
PEORIA DIVISION

| | | |
|---|---|---|
| JUSTIN YANG, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 1:23-cv-1410 |
| | ) | |
| J.H., KIM MCCORMICK, MARJORIE | ) | |
| GREUTER, in her individual capacity, | ) | |
| and EAST PEORIA BOARD OF | ) | |
| TRUSTEES OF THE COMMUNITY | ) | **Plaintiff demands trial by jury.** |
| HIGH SCHOOL DISTRICT 309, | ) | |
| | ) | |
| Defendants. | ) | |

## SECOND AMENDED COMPLAINT

Plaintiff, JUSTIN YANG, by and through his attorneys, JULIE L. GALASSI, BRYANT S. LOWE and HASSELBERG, ROCK, BELL & KUPPLER, LLP, states the following for his SECOND AMENDED COMPLAINT:

## PARTIES

1.     Plaintiff, Justin Yang ("Yang"), resides in Peoria County, Illinois.

2.     Defendant, the Board of the Trustees of the East Peoria Community High School District 309 ("District 309"), is located in Tazewell County, Illinois.

3.     Defendant, J.H. ("J.H."), resides in Tazewell County, Illinois and may still be a minor under the age of 18.

4.     Upon information and belief, Defendant, Marjorie Greuter a/k/a Marjorie Johnson ("Greuter"), resides in Tazewell County.

5.     Upon information and belief, Defendant, Kim McCormick

("McCormick"), resides within the boundaries of the Central District of Illinois.

## JURISDICTION AND VENUE

6.     This Court has subject matter jurisdiction over Count I, IV and V of this matter pursuant to 42 U.S.C. § 1983.

7.     This Court has supplemental jurisdiction over Counts II and III of this matter pursuant to 28 U.S.C. § 1367.

8.     The Central District of Illinois is the proper venue for this matter pursuant to 28 U.S.C. 1391(b)(1) and (2), because the majority of the Defendants reside or are located in the Central District of Illinois and a substantial part of the events giving rise to Yang's claims occurred in the Central District of Illinois, Peoria Division.

## FACTUAL ALLEGATIONS

9.     District 309 hired Yang as an English Language Arts teacher on August 9, 2017.

10.     Yang's evaluations had been above average or excellent such that he was granted tenure in 2020.  Yang's evaluations included his superiors observing his classes for the curriculum taught and Yang's interactions with students.

11.     Yang worked part-time for Allegiant Airlines. This meant Yang had a "buddy pass" with the airline, which is a free flight subject to cancellations and being on standby.

12.     In the Fall Semester of 2022, J.H. was a student in Yang's first period class.

13.     In November of 2022, Yang allowed J.H. to use his free "buddy pass" with Allegiant Airlines, with J.H.'s mother's permission, because J.H. wanted to visit with her brother(s) in Las Vegas over Thanksgiving. J.H. gave Yang her cell phone number in the event he was notified of a change in the flight schedule.

14.     In December of 2022, J.H. often requested to stay in Yang's classroom during second period when she was scheduled for study hall and Yang had a free period. J.H. confided in Yang regarding details about her home life that troubled her. Yang tried to be supportive of her.

15.     After Yang noticed that J.H.'s desire to stay in his classroom during her study hall period was becoming too frequent, Yang refused her daily requests. Her presence was interfering with his assignment preparation and other teaching duties.

16.     On or about December 7, 2022, Yang was called to Greuter's office. Greuter was the superintendent for District 309. Yang was told he had been accused of inappropriate communications with students. This included that:

            a.     Yang was accused of writing "Dem Sum Bitches" on the blackboard. Yang explained that in discussing stereotypes in an AP class a student had written the words and Yang erased it.

            b.     Yang was accused of sending a student a GIF of a naked man. Yang said that was untrue, he had sent the student a GIF of a male wrestler based on their discussions about wrestling.

            c.     Yang was accused of telling a student to "kick me in the balls." Yang admitted that he had been corrected by a transgender

student several times for accidentally saying "she" instead of "he." Yang clarified he had stated for the student to kick him in the balls if he said "she" instead of "he" again.

d.   Yang was accused of inappropriate language in text messages with J.H. Yang denied the correspondence was inappropriate and expressed here was merely trying to relate and be supportive.

17.   Greuter commented to Yang that his actions constituted grooming and that she did not believe him.

18.   Grooming is a Class 4 felony in Illinois. A person commits grooming when communicating with a minor in order to seduce, solicit, lure or entice the minor into engaging in sexual conduct. 720 ILCS 5/11-25

19.   As a result of the aforementioned allegations, Greuter issued Yang a letter of reprimand.

20.   J.H. was the individual who reported the alleged inappropriate communications to Greuter.

21.   A few days later, J.H. went to Principal Brown with more allegations against Yang. J.H. asked and accompanied other students to make false complaints about Yang. The allegations and complaints consisted, in part, of the following:

a.   J.H. said Yang would talk during second period about his wife not wanting him sexually anymore.

b.   J.H. said she was nervous because what Yang had said and done was inappropriate, creepy and made her uncomfortable to be in

4

the room with him.

c.    Yang had told a female student her mother was "hot" after seeing a picture of the two of them together.

d.    Yang stated to two female students "did you just grab each other's boob?"

e.    Yang was frequently seen one on one with female students and he had other student's phone numbers.

f.    Yang told a female student she looked "hot" in the dress she was wearing.

g.    Yang said to a female student he wanted to "bang" other people's moms.

h.    A student observed Yang talking to two female students and he was freaked out and really sweaty.

i.    Yang told a female student who was a witch on the homecoming float that she was "hot."

j.    Yang told a male student he should have slept with his girlfriend while they were together.

22.    On or about December 12, 2022, Yang went to Greuter because J.H. had been posting on Instagram that he was a pedophile. Greuter said that she had heard from other students and if she knew then what she knows now, his letter of reprimand would have been a request for resignation. She never elaborated what the details of those communications were. She informed Yang that she intended to speak with the

District's attorney later and expected him to go before the Board for termination unless he resigned.

23.     Greuter commented to Yang that Yang was in serious trouble.

24.     After Greuter's meeting with Yang, Greuter had a conversation with Yang's union representative, McCormick, about the meeting that was to take place the following day.

25.     On or about December 13, 2022, Yang met with Greuter, who informed him that he was suspended.

26.     Yang then stepped out of the meeting to speak with McCormick. McCormick told Yang she had spoke with Greuter the night before. McCormick told Yang she was not representing him in regard to any potential discipline, and he needed to get a criminal attorney. McCormick also told Yang he was in big trouble and needed to resign fast so there would be no record.

27.     McCormick had no information about the allegations against Yang other than what Greuter told her the night before.

28.     McCormick never discussed any of the allegations against Yang with Yang to get his side of the story.

29.     Both Greuter and McCormick's statements to Yang mirrored each other. Parents were angry over the pedophile allegations, Yang did not want any of these allegations to become public, Yang did not want the allegations on his record, Yang was in serious trouble of a criminal nature, and his resignation needed to be completed as soon as possible.

30.    As a result of Greuter and McCormick's statements, Yang believed a suspension and hearing would lead to criminal exposure for grooming and/or sexual abuse.

31.    When Yang stepped back into the meeting, Greuter handed Yang a one sentence, pre-typed resignation letter, which Yang signed. It is attached hereto as **Exhibit A**.

32.    Yang then asked if his resignation would cease the investigation.

33.    Before Yang's wife was scheduled to come home for work later that day (December 13, 2022), she telephoned him. Yang's wife accused him of grooming minor students and being forced from the school by police. Yang's wife promptly left the marital home with their children and refused to allow him any contact with his children.

34.    Within a week of December 13, 2023, Yang's wife filed a petition for dissolution of marriage.

35.    In January of 2023, Yang's wife filed a pleading in the divorce proceedings alleging that Yang had resigned as a result of an investigation related to one or more acts of abuse Yang committed against minor children in his care and control. The pleading also references a report submitted by Greuter to the Illinois Board of Education on January 15, 2022, which accused Yang of acts of grooming. Greuter's Report is attached hereto as **Exhibit B.**

36.    More specifically, Greuter's Report states in part that Yang had been grooming individuals (minor students) and his behavior would have eventually led to

physical relationships.

37.     Greuter stated she made the report pursuant to 105 ILCS 5/10-21.9 of the Illinois School Code which mandates reports of instructor sexual misconduct. Sexual misconduct is defined, in part, as contact directed to a student to establish as romantic or sexual relationship. 105 ILCS 5/22-85.5(c).

38.     As a result of the false abuse allegations, Yang's contacts with his children were strictly supervised for a lengthy period of time.

39.     Neither Greuter nor McCormick ever told Yang the allegations listed in Paragraph 21.  The allegations are false.

<u>COUNT I</u>

<u>VIOLATION OF YANG'S DUE PROCESS RIGHTS BY DISTRICT 309</u>

40.     Yang realleges and incorporates paragraphs 1–39 into Count I.

41.     Yang had a property interest in his continuing employment with the District by virtue of 105 ILCS 5/34-85, which provides Yang could only be removed from his employment for cause.

42.     42 U.S.C. § 1983 provides that:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

43.     The Fourteenth Amendment to the United States Constitution states

8

that "[n]o State shall . . . deprive any person of life, liberty, or property, without due process of law . . . ." U.S. Const. amend. XIV, § 1.

44.     District 309 deprived Yang of his property interests without due process.

45.     District 309 failed to inform Yang of the allegations against him listed in paragraph 21, so he would have the opportunity to refute the charges before being suspended in violation of the District's Professional Personnel policy 5:240.

46.     District 309 coerced Yang's resignation, under threat of criminal investigation and charges, by terminating Yang without the benefit of any pre or post deprivation hearing.

47.     As a direct and proximate cause of the aforementioned acts of the Board and its agents, Yang, suffered tangible and intangible losses.

WHEREFORE Plaintiff, JUSTIN YANG, respectfully requests that this Court enter judgment in his favor and against Defendant, BOARD OF TRUSTEES OF THE EAST PEORIA COMMUNITY HIGH SCHOOL DISTRICT 309, and grant the following relief:

A.     compensatory damages;

B.     damages for emotional distress;

C.     attorney's fees, interest, costs and such further relief as the Court deems just and equitable.

**PLAINTIFF DEMANDS TRIAL BY JURY.**

## COUNT II
## DEFAMATION BY DEFENDANT J.H.

48.     Yang realleges and incorporates paragraphs 1–39 into Count II.

9

49.     The statements made by J.H. are false.

50.     J.H.'s false and defamatory statements were made and published without a recognized privilege.

51.     J.H.'s false statements assert facts, not opinions. As such, they cannot be characterized as mere hyperbole. They do not constitute loose or configurative language. No reasonable person could reasonably believe that J.H.'s false statements assert opinion, hyperbole, or figurative language.

52.     J.H.'s statements cannot reasonably be subjected to an innocent construction.

53.     J.H.'s false statements constitute defamation per se under Illinois law. Because of the nature of the statements, damage to Yang's personal and professional reputation is presumed.

54.     J.H. acted with actual malice in making the statements because J.H. knew that her statements were false or acted with a reckless disregard of whether the statements were false or not.

55.     The false statements were made and published by J.H. with actual malice and ill-will towards Yang.

56.     J.H.'s false and defamatory statements constitute willful, wanton, malicious, and intentional misconduct which justifies an award of punitive damages to punish J.H, and to deter others from similar egregious wrongdoing.

57.     Based upon the foregoing, J.H.is liable for defamation under Illinois law.

WHEREFORE Plaintiff, JUSTIN YANG, respectfully requests that this Court

enter judgment in his favor and against Defendant, J.H., and grant the following relief:

A.      To award Yang compensatory and punitive damages in excess of $250,000.00.

B.      To award Yang such other or further relief as is just and equitable in the circumstances.

**PLAINTIFF DEMANDS TRIAL BY JURY.**

**COUNT III**

**INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS BY J.H.**

58.     Yang realleges and incorporates paragraphs 1–39 into Count III.

59.     J.H.'s conduct described herein was extreme and outrageous.

60.     J.H. intended to cause Yang emotional distress and/or recklessly disregarded the probability that her actions would cause Yang emotional distress.

61.     Yang suffered severe and/or extreme emotional distress.

62.     Yang's emotional distress was proximately caused by J.H.'s outrageous conduct of accusing him of being a pedophile.

63.     Based upon the foregoing, J.H. is liable for the Illinois common law tort of intentional infliction of emotional distress.

WHEREFORE Plaintiff, JUSTIN YANG, respectfully requests that this Court enter judgment in his favor and against Defendant, J.H., and grant the following relief:

A.   To award Yang compensatory and punitive damages in excess of $250,000.00.

B.   To award Yang such other or further relief as is just and equitable in the circumstances.

**PLAINTIFF DEMANDS TRIAL BY JURY**

## COUNT IV

## VIOLATION OF YANG'S DUE PROCESS RIGHTS BY GREUTER

64.   Yang realleges and incorporates paragraphs 1–39 into Count IV.

65.   Yang had a property interest in his continuing employment with the District by virtue of 105 ILCS 5/34-85, which provides Yang could only be removed from his employment for cause.

66.   42 U.S.C. § 1983 provides that:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

67.   The Fourteenth Amendment to the United States Constitution states that "[n]o State shall . . . deprive any person of life, liberty, or property, without due process of law . . . ." U.S. Const. amend. XIV, § 1.

68.   Greuter and McCormick engaged in a concerted effort to deprive Yang

12

of his property interest without due process when they sought to remove Yang as an employee by procuring his near immediate resignation through coercion without the benefit of any pre or post deprivation hearing.

69.     Greuter, a state actor, and McCormick, a private citizen, acted in concert under color of state law.

70.     Greuter and McCormick had an implied or express agreement to deprive Yang the opportunity to refute the allegations against him before being suspended in violation of the District's Professional Personnel policy 5:240 and to coerce his resignation to deprive Yang of his Fourteenth Amendment rights.

71.     Greuter and McCormick's implied or express agreement is evidenced by their actions, conduct, or circumstances present at the time of and before they coerced Yang's resignation. This includes that Greuter and McCormick were in communication about Yang the day before he resigned, neither Greuter or McCormick told Yang about the allegations against him, Greuter and McCormick's statements to Yang were nearly identical. Further, McCormick was not theorizing or seeking information from Yang. She intentionally sought to impress criminal charges were coming and his resignation was immediately necessary, per her understanding with Greuter.

72.     Both Greuter and McCormick were willful participants. Upon information and belief, Greuter and McCormick were not forced to engage in the conduct set forth above.

73.     As a direct and proximate cause of the aforementioned acts of Greuter,

Yang suffered tangible and intangible losses.

WHEREFORE Plaintiff, JUSTIN YANG, respectfully requests that this Court enter judgment in his favor and against Defendant, MARJORIE GREUTER, and grant the following relief:

A.    compensatory damages;

B.    damages for emotional distress; and

C.    attorney's fees, interest, costs and such further relief as the Court deems just and equitable.

**PLAINTIFF DEMANDS TRIAL BY JURY.**

## COUNT V

## VIOLATION OF YANG'S DUE PROCESS RIGHTS BY MCCORMICK

74.    Yang realleges and incorporates paragraphs 1–39 into Count IV.

75.    Yang had a property interest in his continuing employment with the District by virtue of 105 ILCS 5/34-85 which provides Yang could only be removed from his employment for cause.

76.    42 U.S.C. § 1983 provides that:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

14

77. The Fourteenth Amendment to the United States Constitution states that "[n]o State shall . . . deprive any person of life, liberty, or property, without due process of law . . . ." U.S. Const. amend. XIV, § 1.

78. Greuter and McCormick engaged in a concerted effort to deprive Yang of his property interest without due process when they sought to remove Yang as an employee by procuring his near immediate resignation through coercion without the benefit of any pre or post deprivation hearing.

79. McCormick, a private citizen acted under color of state law with Greuter, a state actor.

80. Greuter and McCormick had an implied or express agreement to deprive Yang the opportunity to refute the allegations against him before being suspended in violation of the District's Professional Personnel policy 5:240 and to coerce his resignation to deprive Yang of his Fourteenth Amendment rights.

81. Greuter and McCormick's implied or express agreement is evidenced by their actions, conduct, or circumstances present at the time of and before they coerced Yang's resignation. This includes that Greuter and McCormick were in communication about Yang the day before he resigned, neither Greuter or McCormick told Yang about the allegations against him, Greuter and McCormick's statements to Yang were nearly identical. Further, McCormick was not theorizing or seeking information from Yang. She intentionally sought to impress criminal charges were coming and his resignation was immediately necessary, per her understanding with Greuter.

15

82.    Both Greuter and McCormick were willful participants. Upon information and belief, Greuter and McCormick were not forced to engage in the conduct set forth above.

83.    As a direct and proximate cause of the aforementioned acts of McCormick, Yang suffered tangible and intangible losses.

WHEREFORE Plaintiff, JUSTIN YANG, respectfully requests that this Court enter judgment in his favor and against Defendant, KIM MCCORMICK, and grant the following relief:

A.    compensatory damages;

B.    damages for emotional distress;

C.    punitive damages; and

D.    attorney's fees, interest, costs and such further relief as the Court deems just and equitable.

### PLAINTIFF DEMANDS TRIAL BY JURY.

Justin Yang,
    Plaintiff

By:    *Julie L. Galassi*
JULIE L. GALASSI (ARDC NO. 6198035)
BRYANT S. LOWE
Hasselberg, Rock, Bell & Kuppler, LLP
4600 N. Brandywine Drive, Suite 200
Peoria, Illinois 61614
Tel:    (309) 688-9400
Fax:    (309) 688-9430
Email:    jgalassi@hrbklaw.com
        blowe@hrbklaw.com

<u>**CERTIFICATE OF SERVICE**</u>

I certify that on June 13, 2024, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

Randall W. Slade
Roman G. Klaric
Franco Moroney Buenik, LLC
500 West Madison Street, Suite 3900
Chicago, Illinois 60661
(312) 469-1000
Randall.slade@francomoroney.com
Roman.klaric@francomoroney.com

Fadi B. Rustom
Hall & Rustom, LLC
316 SW Washington St., Ste. 1A
Peoria, IL 61611
Rustom@hallrustom.com
schaer@hallrustom.com

And I hereby certify that I have mailed by United States Postal Service the document to the following non CM/ECF participants:

None.

JUSTIN YANG,
Plaintiff,

*/s/ Julie L. Galassi*
JULIE L. GALASSI Esq., (ARDC No. 6198035)
Bryant S. Lowe
HASSELBERG, ROCK, BELL & KUPPLER, LLP
Suite 200 Associated Bank Building
4600 N. Brandywine Drive
Peoria, IL 61614-5591
Telephone: (309) 688-9400
Facsimile: (309) 688-9430
E-mail: jgalassi@hrbklaw.com
blowe@hrbklaw.com

17

December 13, 2022

I, Justin Yang, resign from my employment as a teacher at EPCHS effective immediately.

Signature

**EXHIBIT A**

# East Peoria Community High School District 309

1401 E. Washington St., East Peoria, IL 61611
Phone: 309-694-8300    Fax: 309-694-8322

*Dr. Marjorie Greuter*
*Superintendent of Schools*

*Ms. Khassandrae Brown*
*Principal*

December 15, 2022

Illinois State Board of Education
Office of the General Counsel
100 West Randolph Street, Suite 14-300
Chicago, Illinois 60601

Jeff Ekena
Regional Superintendent
Regional Office of Education No. 53
414 Court Street, Pekin, IL 61554

      Re:    Reporting obligations under Section 5/10-21.9(e-5) of the Illinois School Code

To Whom It May Concern:

      This mandatory letter is delivered in response to my reporting obligations found in Section 5/10-21.9(e-5) of the Illinois School Code. I am the Superintendent of East Peoria Community High School District No. 309 located in Tazewell County, Illinois. In my role in this position, I have reasonable cause to believe that a former employee in our district may have committed one or more acts of abuse, and such act(s) resulted in his resignation from the school district.

      Specifically, Justin Yang, IEIN: 911541, taught English for us since August 2017, resigning on Tuesday, December 13, 2022, effective immediately. This was the result of an investigation that started Thursday, December 8, 2022 when a teacher received a report from a student that a male teacher had been making inappropriate comments and having unprofessional conversations, both in person and via text messages with a 15 year old student. After speaking with the student and the teacher, and examining the text conversation, we determined a letter of reprimand was warranted. On December 9, the letter was issued. During that day, we started hearing from additional students who had similar claims. More investigations were done Friday and Monday. A total of 7 students reported conversations and communications that were inappropriate, including referencing girls' bodies, calling them "hot", and commenting on their mothers. In one instance, Mr. Yang told a student that he had permission to kick Mr. Yang "in the balls" and in another, Mr. Yang wrote, "Dem sum bitches" on the whiteboard. A search of Mr. Yang's school email revealed at least 4 inappropriate conversations between he and 4 different students. One of the emails included a GIF of a naked male on a birthday cake accompanied by the statement, "Look, they put me on a birthday cake". This was sent to a female student.

**EXHIBIT B**

P2



## East Peoria Community High School District 309
### 1401 E. Washington St., East Peoria, IL 61611
### Phone: 309-694-8300    Fax: 309-694-8322

*Dr. Marjorie Greuter*
*Superintendent of Schools*

*Ms. Khassandrae Brown*
*Principal*

Taken individually, the reports appear to be poor judgment, inappropriate, and unprofessional at worst.  But, taken holistically, they paint a picture of a teacher who continually steps over the line and is participating in grooming individuals.  The reports from the students we talked with indicate that conversations were sexualized on a regular basis.  We have no evidence of any physical relationships, but I believe this behavior would eventually lead to that.

Enclosed you will find copies of the reference documents.  These include the original text conversation, a copy of the birthday cake email, and some email conversations with students.

I believe that the above summary concludes my responsibilities under the School Code.  Please advise if you have any questions.

Sincerely,

Dr. Marjorie Greuter
Superintendent

cc:    Justin Yang

P3

December 13, 2022

I, Justin Yang, resign from my employment as a teacher at EPCHS effective immediately.

Signature

The following is an account of the investigation of Justin Yang following a report by a student that he was saying inappropriate things to a female student. This report includes names of persons involved and is CONFIDENTIAL.

– student names
redacted –

12/7/22

3:45–I received a call from Khassandrae Brown (the principal) that a student had confided in a teacher ████████████ after school that she has a friend who has been texting with a different teacher. The student is a 15 y.o. Female and the teacher is male. He allegedly gave her his phone number because she was having problems at home. The student reports that one of the texts (though she hasn't seen it) told her friend that he hasn't had sex with his wife in a long time and that he is sharing information of a personal nature.

I checked board policy and Administrative Procedures to verify this violates policy, which I knew it did. (5:120) We have been working/bargaining with the union on an Employee Code of Professional Conduct, pursuant to Faith's Law.

I called Jay Greening, our school attorney, to make sure we pursued this investigation the right way to provide as much protection as possible to the District.

Questions for Jay:
1. Can we ask for the employee to provide records of his texts with any students without proof of misconduct (at the current time, we have none).
2. What can we do administratively while we are investigating? Paid leave of absence?
3. How do we protect the student(s) involved?

12/8/22
The student who exchanged the text messages is ███████████████ She hasJustin Yang 1st hour and typically stays after the bell, during his 2nd hour prep, and hangs out and talks.
· She has study hall second hour. She reports that during these talks that he complains about his wife and indicated his wife doesn't want him anymore in a sexual sense. No one else has witnessed these conversations. She also is in his room before school each day, along with several others.

The texting started when he arranged for her to use his Allegiant "buddy" pass to fly to Las Vegas over Thanksgiving weekend. This was after she stayed in his room all day on the day she found out one of our other students, her friend ██████ died. Mr. Yang works for Allegiant on a part-time basis and much of a text conversation was about the logistics of arranging that flight for the student.

She is nervous because she understands now that what he has said and done is inappropriate/creepy and it makes her uncomfortable to be in the room.

She willingly shared the text messages with us. They include inappropriate language, a reference to her being "hot" and a picture of himself standing in front of the Raiders plane at the airport (confirming it is actually him).

12/8 after school

Khassandrae and I met with Justin▆▆▆ and▆▆▆ (union presidents). I asked him about the allegations we had received. He admitted to texting with a student, arranging for a "buddy pass" flight for her to Las Vegas, and denied telling her that he and his wife hadn't been intimate in a long time. The first time he was asked about that conversation, he said, "not that I can recall". The second time he was asked, later in the conversation, he said, "we don't talk about me". I indicated that we had three options of where this might go: a letter of reprimand and possible suspension, being taken to the board and discussed in open session with all allegations becoming public, or asking for his resignation. I arranged for a meeting the next morning to tell him what would be happening. He wanted to know right then because "it will be uncomfortable for me not to know". I indicated I wasn't making a decision that afternoon.

12/9   7:30 am

We reconvened Friday morning. I told him I did not believe that he hadn't disclosed his personal sex life with his student. I also indicated that, based on the evidence of the text messages, we probably didn't have enough for dismissal but that I was issuing the letter of reprimand. We went through the letter in detail and talked about the directives from the letter. He indicated it wouldn't be a problem moving forward.

12/12 1st hour

▆▆▆ returned and requested a schedule change so she wouldn't have to be in Mr. Yang's class. I took her to▆▆▆, filled her in briefly, and left▆▆▆ with her to work out how we would handle the rest of the semester. It was determined that she would be assigned in the counseling office for attendance purposes and would do the work, which would be graded by someone else. She was already not scheduled to be in his class second semester.

2nd hour.

▆▆▆ brought a second student▆▆▆ indicated that Mr. Yang had said, "You make a hot wicked witch" to her the day after the Homecoming Parade when she was the wicked witch on the float. This apparently triggered something for▆▆▆ as she was very upset and requested to go home excused. I had her call her mom, and told her mom that▆▆▆ wanted to talk to her about what was going on when she got home and that Mom could call me if she needed more information after she and▆▆▆ talked. At 11:55, I followed up with▆▆▆ mom. She asked about police involvement and the rest of the semester. I told her we had no reports of anything being physical, but the police were made aware of the situation and were creating a report.

Throughout the day, we got word that▆▆▆ was talking to others about coming to report inappropriate comments made by Mr. Yang. I explained initially that we had done what we could legally do. This was before additional students came forward.

Ms. Menzione and I spoke with ▮▮▮▮▮▮, who reported that Mr. Yang had called her Mom "hot" after seeing a picture of the two of them. ▮▮▮▮▮ was not forthcoming with any other information, as she is a supporter of Mr. Yang.

▮▮▮▮▮▮▮▮ reported that this was her first time having him in class and said initially she really liked him because he was relatable to teenagers. She also reported that after ▮▮▮▮ asked her if he had ever said anything inappropriate, that she and her friend ▮▮▮▮▮▮▮ walked into class one day saying OMG and Mr. Yang responded, "did you just grab each other's boob?" She then realized that this was inappropriate and it made her uncomfortable. She also indicated that he perseverated on a picture of her boyfriend in a tank top and kept commenting on how big his arms were. He said to ▮▮▮▮ "but you would know about his arms, I'm sure". ▮▮▮▮ also reported that Mr. Yang was talking with ▮▮▮▮▮▮▮▮▮ and was using the wrong pronouns, accidentally. She heard him say, "The next time I use the wrong pronoun, you can kick me in the balls". (When later questioned about this, Mr. Yang did admit to this.)

▮▮▮▮ also reported that they were talking about stereotypes about guys working the "back of the house" in restaurants while girls work the "front of the house". A student made an inappropriate "that's what she said" comment and Mr. Yang smiled and laughed and didn't make any correction. He also wrote, "dem sum bitches" on the board. ▮▮▮▮ said she apologized to the student teacher, who was in the room.

▮▮▮▮ indicated ▮▮▮▮▮▮▮ is always in his room and she sees him talking 1 on 1 with students, including her. She also said profanity is still being used (previously addressed multiple times) and that he doesn't condone it, but doesn't correct it, either.

▮▮▮▮ also indicated she knows that he has other students' phone numbers.

▮▮▮▮▮▮▮▮▮ came in with a friend and reported that Mr. Yang had told her, when she wore a tighter shirt, that she looked "hot" in a dress she was wearing and that it made her very uncomfortable.

▮▮▮▮ mother called and told me she was retaining an attorney because ▮▮▮▮ had spent the last 4 days in her room. I gave her our attorney's name and number.

After ▮▮▮ we spoke with ▮▮▮▮▮▮ She indicated that Mr. Yang was scrolling through her step-mom's instagram (she's a power lifter) and said multiple times, "she's so hot". In addition, she indicates she has heard him say he wants to "bang" other people's moms.

▮▮▮▮ said she goes early to class after 5A lunch and they talk about drama and he wants to know what's going on. She also indicated that ▮▮▮▮▮▮ and ▮▮▮▮▮▮ were talking to him when she went in the room today and he seemed freaked out. He got really sweaty during class.

Jill Thornton, our Director of special services, indicated that our school psych reported that while waiting for Jill and the parent to get on an IEP meeting, Mr. Yang said to the student, "Mrs. Thornton is not on yet, but she needs to hurry up because I have to pee."

▇▇▇▇▇▇▇ was called in and reported that he compliments her on her body. When a friend of hers ▇▇▇▇▇▇▇ was showing her homecoming pictures she indicated she didn't like her profile because she was "flat". Mr. Yang looked at ▇▇▇▇▇ and said "some people don't have to edit their photos like that…like your best friend" (commenting on ▇▇▇▇▇ chest). ▇▇▇▇▇ also indicated that it's weird that he has commented about not having sex with his wife, whom the students call "Rachel".

Other comments made to ▇▇▇▇▇ in reference to her wearing jeggings, was, "he let's you wear that? You can literally see everything."

▇▇▇▇▇ also shared that he had sent her a birthday GIF. She said it was a naked man on a cake and he had said, "I can't believe they put a picture of me on a birthday cake". This email is included in the evidence. ▇▇▇▇▇ Indicated that her boyfriend told her, "that man has been hitting on you". She said two ex-boyfriends had told her the same thing.

The evening of the 12th, ▇▇▇▇ put something on her SnapChat about Mr. Yang being a pedophile and being inappropriate with minors. We were contacted by two students who had graduated about inappropriate things he had said to them the next morning. One states, "He told an ex-boyfriend of mine in front of a whole class room during raider hour that he should've slept with me and how I was so hot and he shouldn't have lost me." This email is included with evidence.

The afternoon of 12/12, Mr. Yang and his union representative came in to talk to me about ▇▇▇▇ ▇▇▇▇ saying things about him. I refocused the conversation on how we'd heard from multiple additional students about inappropriate comments and conversations. I told him had we known on Friday what we know now, the letter of reprimand would have probably been a request for his resignation. I told him I would need to consult the school attorney and the board, but that he could expect I would ask for his resignation the next day.

The evening of 12/12, I spoke with our attorney, who said we had enough to ask for a resignation or take to the board for dismissal. I also spoke with the region's IEA rep about the meeting the next morning. I informed her I would be putting him on administrative leave pending further investigation.

7:30 AM Tuesday, 12/13
I met with Justin Yang, Laura Moore, Teresa Eberle (union presidents), Kim McCormick (IEA Rep), and Denee Menzione (Asst Principal who helped with the investigation). I informed Justin I was putting him on paid leave. He caucused with his union reps and Kim. They then returned to my office and Justin indicated he was tendering his resignation. I had a resignation letter ready for him to sign (included in evidence). When we spoke, he asked if I was going to cease

my investigation....which sent up a huge red flag.  I told him I would do my due diligence to make sure I was protecting our students.

Justin, Teresa and Denee made arrangements for him to come clean out his classroom at 5:00 pm and Denee got his effects from his room that he needed and then walked him out to his vehicle.

He contacted Teresa and Denee and asked to postpone the room cleanout until Wednesday. They agreed.  Then he contacted Denee and Khassandrae and asked if he could once again do it Tuesday.  Khassandrae said no as she was the only one available and she didn't want to be alone with him.

On Wednesday, 12/14, he arrived at 4:30 to clean out his room with Teresa and Khassandrae present.  I continued to investigate and found multiple emails on his school account that were not school related between Justin and individual students.  Some of these are included in evidence.

On Thursday, 12/15, I discovered several different Google chats between Justin and other staff. Many of these were inappropriate conversations as well.

All documentation has been included in the physical investigation file and a letter has been sent to ISBE and the ROE (and JY) pursuant to ILSC 5/10-21.9(e-5).