IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DIVISION OF ILLINOIS
PEORIA DIVISION

| | |
|---|---|
| JUSTIN YANG, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 1:23-cv-1410 |
| | ) |
| J.H., KIM MCCORMICK, MARJORIE GREUTER, in her individual capacity, and EAST PEORIA THE BOARD OF TRUSTEES OF THE COMMUNITY HIGH SCHOOL DISTRICT 309 | ) ) ) ) |
| | ) |
| Defendants. | ) |
| | ) |

**DEFENDANT EAST PEORIA BOARD OF TRUSTEES OF COMMUNITY HIGH SCHOOL'S MEMORANDUM OF LAW IN SUPPORT OF ITS RULE 12(B)(6) MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT**

NOW COMES Defendant, East Peoria The Board of Trustees of the Community High School District 309, by and through its attorneys, Franco Moroney Buenik LLC, and for its Memorandum of Law in Support of Its Motion to Dismiss Plaintiff's Second Amended Complaint, state as follows:

**INTRODUCTION**

Plaintiff Justin Yang resigned from his employment with East Peoria Community High School District 309 (the "District") after allegations of inappropriate conduct and "grooming" behavior were made against him. When initially confronted by the District's Superintendent Marjorie Greuter, Yang admitted that some of the allegations were true and Yang was provided a letter of reprimand. A few days later, Yang voluntarily resigned his employment with a clear and unequivocal letter dated December 13, 2022 after another meeting with Superintendent Greuter and his union representative, Kim McCormick. Yang alleges that he was not told of

1

certain allegations made against him, which Yang claims are false. However, Yang's resignation is clear, and once made, terminates his employment with the District and further terminates any property right he may have to employment. Yang was offered the choice of proceeding to a hearing in front of the District's Board of Trustees (the "Board"), and instead chose to resign.

The basis of Plaintiff's claim against the Board is that he was not told about the allegations made against him before he resigned, and that his resignation was "coerced" under "threat of criminal investigation and charges." This is similar to the claims Yang made in his First Amended Complaint, which was dismissed without prejudice. As with the First Amended Complaint, there is no allegation that Yang sought further information about the allegations before resigning. Further, as with the First Amended Complaint, there is no allegation that Superintendent Greuter told Yang that he could avoid criminal prosecution if he resigned – only that Yang was in "serious trouble." In fact, Superintendent Greuter was obligated to report Yang's misconduct to the Illinois State Board of Education ("ISBE") regardless of whether Yang resigned, and Superintendent Greuter has no control over the State's decision to pursue charges against Yang. Ultimately, Yang chose to resign with full knowledge that the resignation was based upon allegations of inappropriate conduct with his students, ending his employment and ending any property right he had in continued employment. Because Yang voluntarily resigned, Count I of the Second Amended Complaint – the only Count against the Board – should be dismissed and the Board should be dismissed from this lawsuit.

## SUMMARY OF THE SECOND AMENDED COMPLAINT

Yang filed his original Complaint at Law on or about October 31, 2023 (ECF Dkt. #1) against Defendants J.H. (a minor) and the Board alleging claims arising from his resignation from the District, where he worked as a teacher at East Peoria High School. Plaintiff thereafter

filed a First Amended Complaint on November 28, 2023. (ECF Dkt. #5). The Board filed its Motion to Dismiss the First Amended Complaint at law. (ECF Dkt. #10). The Court granted the Board's Motion on May 14, 2024, but permitted Yang to file another amended Complaint if he could in good faith address the deficiencies addressed at oral argument.

Yang filed his Second Amended Complaint on June 13, 2024. (ECF Dkt. #16). Yang's five (5) count, eighty-three (83) paragraph Second Amended Complaint brings the following claims against the Defendants:

- Violations of Yang's due process rights under 42 U.S.C. § 1983 against the Board (Count I);

- State law defamation against Defendant J.H. (Count II);

- State law intentional infliction of emotional distress against Defendant J.H. (Count III);

- Violations of Yang' due process rights under 42 U.S.C. § 1983 against Defendant Marjorie Greuter (Count IV); and

- Violations of Yang's due process rights under 42 U.S.C. § 1983 against Defendant Kim McCormick (Count V);

As with the First Amended Complaint, the sole claim against the Board is for violations of Yang's due process rights arising out of his resignation of employment.

Yang was employed by the District as an English Language Arts teacher since August 2017. (ECF Dkt. #16, ¶ 9). As in the First Amended Complaint, Yamg's Second Amended Complaint alleges that on or about December 7, 2022, he was called to the office of District Superintendent Marjorie Greuter. (ECF Dkt. #16, ¶ 16). For the first time, Yang alleges that during this meeting, he was accused of using inappropriate language in text messages with J.H., that he denied the correspondence was inappropriate, and that Superintendent Greuter told Yang his actions constituted grooming and that she did not believe him. (ECF Dkt. #16, ¶¶ 16(d)-17).

3

During this meeting, Yang was issued a letter of reprimand for inappropriate classroom behavior, including inappropriate text-message communications with a student. (ECF Dkt. #16, ¶ 19; Letter of Reprimand, attached as Exhibit A[1]). The letter of reprimand confirms that Yang admitted to many of the inappropriate acts alleged. (Ex. A).

Yang alleges that between December 7th and 12th, 2022, Defendant J.H., and other unknown and unnamed students made several additional allegations about Yang, including:

   a. Defendant J.H. stating that Yang would tell students him and his wife no longer were sexually active;

   b. Defendant J.H. was nervous to be around Yang because of his behavior;

   c. Yang telling a female student that her mother was "hot";

   d. Yang commenting to two female students "did you just grab each other's boobs'";

   e. Yang being frequently seen one on one with female students and other students' phone numbers;

   f. Yang telling a female student she was "hot" while she was wearing a certain dress;

   g. Yang telling a female student he wanted to "bang" other student's moms;

   h. Yang talking to two female students and was "freaked out and sweaty";

   i. Yang telling another student she was "hot" while on a homecoming parade float; and

   j. Yang telling a male student "…he should have slept with his girlfriend while they were together."

---

[1] Plaintiff did not attach the letter of reprimand to the Complaint. However, the letter is referenced in the Complaint and central to his claims. (ECF Dkt. #16, ¶ 19). Although the Court normally cannot consider extrinsic evidence without converting a motion to dismiss into one for summary judgment, when a document is referenced in the Complaint and central to Plaintiff's claims the Court may consider it in ruling on the motion to dismiss. *Hecker v. Deere & Co.*, 556 F.3d 575, 582-83 (7th Cir.2009).

(ECF Dkt. #16, ¶ 21).

On December 12, 2022, Yang again met with Superintendent Greuter. Plaintiff alleges that during this meeting, Superintendent Greuter told Yang that she would be contacting the District's attorney, and "…expected him to go before the Board for termination unless he resigned." (ECF Dkt. #16, ¶ 22). The Second Amended Complaint adds the allegation that Superintendent Greuter told Yang that "if she knew then what she knows now, his letter of reprimand would have been a request for resignation" and that Yang was "in serious trouble." (ECF Dkt. #16, ¶¶ 22, 23).

Yang met with both Superintendent Greuter and his Teacher's Union Representative, Kim McCormick on December 13, 2022. (ECF Dkt. #16, ¶ 25). Yang was allegedly told by McCormick that he needed to get a criminal attorney and that he needed to "…resign fast so there would be no record", which occurred outside of Superintendent Greuter's presence. (ECF Dkt. #16, ¶ 26). Yang signed the resignation letter on December 13, 2022, which stated "I, Justin Yang, resign from my employment as a teacher at EPCHS effective immediately." (ECF Dkt. #16, ¶ 31; Ex. A). Yang claims that he was not told the allegations in Paragraph 21 by Superintendent Greuter or McCormick before he resigned. (ECF Dkt. #16, ¶ 39).

Yang's Second Amended Complaint further alleges that at some point after December 13, 2022, Yang's wife left the marital home and in January 2023, filed for divorce. (ECF Dkt. #16, ¶ 34). In the divorce proceedings, pleadings submitted by Yang's wife referenced a report filed by Superintendent Greuter to the Illinois Board of Education on December 15, 2022, after Yang's resignation and which Superintendent Greuter was mandated to due under state law (105 ILCS 5/10-21.9). (ECF Dkt. #16, ¶ 35; Ex. B).

5

## **LEGAL STANDARD**

Under Federal Rule of Civil Procedure 12(b)(6), a motion to dismiss is proper where a complaint fails "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). For purposes of the motion, a court must accept as true all well-pled allegations contained in the complaint and draw all inferences in the light most favorable to the non-moving party. *Estate of Davis v. Wells Fargo Bank*, 633 F.3d 529, 533 (7th Cir. 2011). However, to survive a motion to dismiss under 12(b)(6), the complaint must "plausibly suggest that the plaintiff has a right to relief, and allegations raise the possibility of a right to relief above a 'speculative level.'" *EEOC v. Concentra Health Svs., Inc.*, 496 F.3d 773, 777 (7th Cir. 2007), *citing Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Because Plaintiff has not pled any allegations giving rise to the possibility of a right to relief, his Complaint should be dismissed under Rule 12(b)(6).

## **ARGUMENT**

### I. YANG'S COUNT I AGAINST THE DISTRICT SHOULD BE DISMISSED BECAUSE HIS RESIGNATION TERMINATED ANY PROPERTY INTEREST HE HAD IN HIS EMPLOYMENT

Yang admits that he resigned his position on December 13, 2022. While teachers generally have a right to a termination hearing under Illinois law, when a public officer tenders a letter of resignation, "the resignation is an unalterable fact and the officer cannot withdraw the resignation and cannot negate it by continuing to perform the job." *Rohrback v. Department of Employment Security*, 361 Ill. App.3d 298, 305, 835 N.E.2d 955, 962 (4th Dist. 2005). This same standard applies to both private and public employees. *Stearns v. Board of Fire & Police Commissioners*, 59 Ill.App.3d 569, 572, 375 N.E.2d 877, 880 (5th Dist. 1978). As stated by the court in *Stearns*:

> "The resignation of a municipal agent or employee takes effect when delivered to the proper authority, and there has been said to

> be no need for an acceptance thereof by the employer to give it effect. A resignation terminates the employment; it constitutes a complete break in the service, and the absolute termination of relations, and thereafter the person resigning has no rights or duties. After resigning, the employee may not complain of an alleged illegal discharge..."

*Id.* at 573, citing 62 C.J.S. Municipal Corporations § 732, at 1502 (1949) (emphasis added). Where the plaintiff resigns, no due process is necessary. *Bauer v. Saper*, 133 Ill. App.2d 760, 272 N.E.2d 703 (3d Dist. 1971) (finding that a resignation submitted to a proper official to take effect immediately terminates the employee's employment without the necessity of a formal hearing or any formal evidence of acceptance). As stated by the court in *Rohrback*, 361 Ill.App.3d at 306, "[t]he letter stated she resigned; therefore, by operation of law, she resigned." Thus, Yang had no property interest in his employment and the Board had no obligation to provide due process to Plaintiff due to his resignation.

Yang attempts to avoid the impact of his resignation by alleging that the Board "…failed to inform Yang of the allegations against him…so he would have an opportunity to refute the charges before being suspended…" (ECF Dkt. #16, ¶ 45). This ignores the meetings on December 7, 12, and 13, in which Yang was advised that he had been accused of inappropriate communications with students resulting in a letter of reprimand, that Superintendent Greuter had heard further allegations from other students. Certainly Yang knew that he was being asked to resign due to inappropriate contacts with students. Further, there is no allegation that Yang sought further information about the allegations against him.

Yang further alleges that the Board "…coerced Yang's resignation by terminating Yang without the benefit of any pre or post deprivation hearing" – although Yang was advised he would have a termination hearing if he resigned. (ECF Dkt. #16, ¶¶ 22, 46). There is no allegation that the Board or Superintendent Greuter told Yang that they would refrain from

7

reporting him to authorities if he resigned – and in fact Superintendent Greuter has no such discretion.

Employee resignations are presumed to be voluntary even where, as here, the Plaintiff alleges he was given two negative alternatives: either resign, or go before the Board for a termination hearing. (ECF Dkt. #16, ¶ 22). *Christie v. United States*, 207 Ct. Cl. 333, 518 F.2d 584 (1975). In *Christie*, the Court found that a resignation was voluntary where the plaintiff could have alternatively challenged her proposed discharge for cause. "[P]laintiff had a choice. She could stand pat and fight. She chose not to. Merely because plaintiff was faced with an inherently unpleasant situation in that her choice was arguably limited to two unpleasant alternatives does not obviate the voluntariness of her resignation." *Id.* at 587-588. *See also Alvarado v. Picur*, 859 F.2d 448, 453 (7th Cir. 1988) ("[b]ecause Alvarado could have chosen to stand pat and fight, these cases support the conclusion that his resignation was not coerced"); *Dusanek v. Hannon*, 677 F.2d 538, 543 (7th Cir. 1983) (a choice between resigning and being fired is not coercion "if the employee is given sufficient time and opportunity for deliberation of the choice posed").

Here, Yang had every opportunity to "stand pat and fight" the allegations made against him. He is steadfast that the allegations made against him were false. However, he submitted his resignation the day after he was first provided the option. (ECF Dkt. #16, ¶ 16). There are no allegations that he sought further information about the allegations made against him – and yet he still chose to resign. Although he may have been faced with the reality of two unpleasant situations, this is not enough to overcome the voluntary nature of his resignation. *See Christie* at 587-588. He had every opportunity to fight the allegations made against him.

The Court previously granted the Board's Motion on this issue, but permitted Yang to amend if he could "in good conscience." In opposing the Board's previous Motion to Dismiss, Yang alleged that comments made by McCormick – who is not a Board employee – were sufficient to establish coercion. Because the Court concluded that McCormick's comments were not sufficient, Yang has raised new allegations against Superintendent Greuter. Specifically, Yang now alleges (in addition to the allegations in the First Amended Complaint) that:

- On December 7, 2022, Superintendent Greuter told Yang he used inappropriate language in text messages with JH. (ECF Dkt. #16, ¶ 16(d)).

- On December 7, 2022, Superintendent Greuter told Yang his actions constituted grooming and that she did not believe Yang. (ECF Dkt. #16, ¶ 17).

- On December 12, 2022, Superintendent Greuter told Yang that "if she knew then what she knows now, his letter of reprimand would have been a request for resignation." (ECF Dkt. #16, ¶ 22).

- On December 12, 2022, Superintendent Greuter told Yang that he "was in serious trouble." (ECF Dkt. #16, ¶ 23).

None of these allegations suggest coercion. There are no allegations that Superintendent Greuter told Yang that he would be criminally charged if he did not resign.

Yang again alleges that McCormick told him that she had spoken with Superintendent Greuter, in an attempt to link McCormick's comments to Superintendent Greuter. Yang further alleges that McCormick told him she was not representing him in regard to any potential discipline, that he needed to get a criminal attorney, that he was in big trouble, and that he needed to resign fast so there would be no record. (ECF Dkt. #16, ¶ 26). Superintendent Greuter was not present for this meeting. (ECF Dkt. #16, ¶ 26). Yang appears to insinuate that

9

McCormick made these statements at Superintendent Greuter behest, but that is irrelevant as the comments were ultimately made by McCormick. Further, regardless of who made these comments, they do not establish that Yang's choice was to keep his job or avoid criminal prosecution. For example, McCormick allegedly told Yang to get a criminal attorney. This does not suggest that he can avoid criminal charges by resigning. Statements that Yang was in "big trouble" and needed to resign "so there would be no record" likewise do not suggest that Yang could avoid criminal charges by resigning. Nothing attributed to McCormick is coercive as defined by the caselaw.

The Appellate Court of Illinois, Second District, recently faced a fact pattern similar to the case at bar. In *McElroy v. Oswego Fire Prot. Dist.*, 2022 IL App (2d) 210555-U. In *McElroy*, the plaintiff was a paramedic with the Oswego Fire Department. *Id*. at ¶ 5. He was accused of working as an EMT with an expired EMT license for roughly six (6) months. *Id*. at ¶ 9. When the Oswego Fire Department learned of plaintiff's expired license, he was called in front of certain fire chiefs for a meeting. *Id.* at ¶ 10. Plaintiff was allegedly told by his union representative that criminal charges may be brought against him for working as an EMT without a valid license if he did not resign – a much more direct statement of coercion than alleged in this case - although no one from the Fire Department threatened criminal charges. *Id*. at ¶ 11. Plaintiff subsequently resigned from the department after this meeting. . *Id*. at ¶ 13. Plaintiff filed a claim alleging violation of his due process rights in that his resignation was involuntary as there would be possible criminal charges if he did not resign. . *Id*. at ¶ 21. Defendants' motion for summary judgment was granted and plaintiff appealed. . *Id*. at ¶ 27.

The Second District affirmed the trial court's decision, rejecting plaintiff's argument that his resignation was deemed involuntary by the possibility of criminal charges. Specifically, the

Court noted "[t]he mere fact that plaintiff had to choose between resigning and being subject to the disciplinary process is insufficient to deem plaintiff's resignation coerced." *Id*. at ¶ 36. Statements regarding criminal charges do not matter if made by a union representative and not the employer. *Id*. at ¶ 35.

Count I of Yang's Second Amended Complaint at Paragraph 46 alleges that the District, "…coerced Yang's resignation, under threat of criminal investigation and charges, by terminating Yang without the benefit of any pre or post deprivation hearing." (ECF Dkt. #16, ¶ 46). *McElroy* makes clear that the mere threat of a criminal investigation is not in an of itself enough to render a resignation involuntary – particularly where the "threat" is made by a union representative like McCormick. In this case, there are no allegations that Superintendent Greuter told Yang that he would be criminally prosecuted if he did not resign. The closest allegation is that Superintendent Greuter made the ambiguous statement that Yang was in "serious trouble" – but Superintendent Greuter is not alleged to have told plaintiff he could avoid "serious trouble" by resigning. Further, plaintiff admits that he was offered the right to proceed to a Board hearing for termination, and although he claims the allegations against him are false, the Board clearly had sufficient evidence to proceed with termination proceedings based upon allegations of inappropriate communications from at least seven students. *See, e.g., Allen v. Bd. of Trustees of Cmty. Coll. Dist. No. 508*, 285 Ill. App. 3d 1031, 1036 (1st Dist. 1996). Under these allegations, Yang cannot state a cause of action against the Board. Yang voluntarily resigned and his resignation was not coerced.

Finally, as set forth more fully above, there are no allegations that Superintendent Greuter told Yang he could avoid criminal prosecution by resigning. However, Superintendent Greuter has no such power, and in fact, as Yang even notes, Superintendent Greuter was required by

11

Illinois law to submit the allegations against Yang to the Illinois State Board of Education if he resigned. 105 ILCS 5/10-21.9(e-5). That section states:

> (e-5) The superintendent of the employing school board shall, in writing, notify the State Superintendent of Education and the applicable regional superintendent of schools of any license holder whom he or she has reasonable cause to believe has committed (i) an intentional act of abuse or neglect with the result of making a child an abused child or a neglected child, as defined in Section 3 of the Abused and Neglected Child Reporting Act, or (ii) an act of sexual misconduct, as defined in Section 22-85.5 of this Code, and that act resulted in the license holder's dismissal or resignation from the school district. ….

This is non-discretionary - if Superintendent Greuter has reasonable cause to believe Yang engaged in an act of sexual misconduct for which he resigned, she was obligated to report Yang.

Section 105 ILCS 5/22-85.5 defines "sexual misconduct" to include

> any act, including, but not limited to, any verbal, nonverbal, written, or electronic communication or physical activity, by an employee or agent of the school district, charter school, or nonpublic school with direct contact with a student that is directed toward or with a student to establish a romantic or sexual relationship with the student. Such an act includes, but is not limited to, any of the following:
>
> (1) A sexual or romantic invitation.
>
> (2) Dating or soliciting a date.
>
> (3) Engaging in sexualized or romantic dialog.
>
> (4) Making sexually suggestive comments that are directed toward or with a student.
>
> (5) Self-disclosure or physical exposure of a sexual, romantic, or erotic nature.
>
> (6) A sexual, indecent, romantic, or erotic contact with the student.

Exhibit B to the Complaint thoroughly documents the basis for Superintendent Greuter to believe Yang was engaged in sexual misconduct as defined by the Illinois School Code prior to his

resignation – *seven* students reported inappropriate conversations and communications, including reports that Yang was "referencing girls' bodies, calling them "hot", and commenting on their mothers" – i.e., engaging in sexualized or romantic dialog, making sexually suggestive comments that are directed toward or with a student, and self-disclosure or physical exposure of a sexual romantic or erotic nature. (ECF Dkt. #16, Ex. B, P2; 105 ILCS 5/22-85.5(3), (4) and (6)). Yang's emails revealed inappropriate conversations with *four* different students, including sending an email to a female student with a GIF of a naked male on a birthday cake. (ECF Dkt. #16, Ex. B, P2). Superintendent Greuter also noted that Yang sexualized conversations on a regular basis, consistent with the reports of the interviewed students. (ECF Dkt. #16, Ex. B, P3). Notes found at P5-P9 of Exhibit B further demonstrate that Superintendent Greuter had no choice but to report the allegations to ISBE.

Because Yang terminated the employment relationship by resigning on December 13, 2022, he cannot state a claim under Section 1983 pursuant a protected property interest. Nor can Yang argue his resignation was involuntary. As such, Count I of Yang's Second Amended Complaint should be dismissed pursuant to Rule 12(b)(6).

## CONCLUSION

The core allegations between the First Amended Complaint and the Second Amended Complaint are the same. Yang engaged in inappropriate communications with several students, was first provided a letter of reprimand and, when additional allegations were reported, Yang was provided the option of resigning or proceeding with a termination hearing in front of the Board, at which he could defend himself against the allegations. Yang chose to resign. Yang's allegations of coerced resignation still fail to state a claim. He has not alleged that Superintendent Greuter threatened or even implied that he could avoid criminal prosecution by

13

resigning. Further, Yang cannot rely upon comments made by McCormick – which still fall short of the choice of "resign or face criminal charges." Superintendent Greuter has mandatory reporting obligations regardless of Yang's decision. For the foregoing reasons, Count I of Yang's Second Complaint should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6) and the Board should be dismissed from this litigation.

          Respectfully submitted,

          /s/ Randall W. Slade
          One of the Attorneys for Defendant,
          East Peoria Community High School District #309 Board of Education

Randall W. Slade (ARDC# 6290778)
Roman G. Klaric (ARDC# 6341509)
FRANCO MORONEY BUENIK LLC
500 West Madison Street, Suite 3900
Chicago, Illinois 60661
(312) 469-1000
Randall.slade@francomoroney.com
Roman.klaric@francomoroney.com

**CERTIFICATE OF SERVICE**

    I, Randall W. Slade, an attorney, hereby certify that on July 11, 2024, I served Defendants Board of Trustees of East Peoria Community High School District 309's Memorandum In Support of Its Rule 12(b)(6) Motion to Dismiss by causing a true and accurate copy of such papers to be filed and served on all counsel of record via the Court's CM/ECF electronic filing system.

Respectfully Submitted,

   /s/ Randall W. Slade              
One of the Attorneys for Defendant,
East Peoria Community High School
District #309 Board of Education

Randall W. Slade – ARDC #6290778
Franco Moroney Buenik, LLC
500 West Madison Street, Suite 3900
Chicago, Illinois 60661-2510
(312) 469-1000
Randall.slade@francomoroney.com

**East Peoria Community High School District 309**
1401 E. Washington St., East Peoria, IL 61611
Phone: 309-694-8300  Fax: 309-694-8322

Dr. Marjorie Greuter
Superintendent of Schools

Ms. Khassandrae Brown
Principal

December 9, 2022

Mr. Justin Yang
█████████████

Re: Written Reprimand

Dear Justin,

This letter will confirm our conversations of December 8 and 9, 2022. You, your IEA representative, and I agreed that you would receive a written reprimand for your conduct that we discussed in lieu of referral of this matter to the Board of Education for possible greater sanction(s).

As we discussed, , the principal received a report on December 8 alleging inappropriate comments and actions on your part toward a 15 year old female student named J█ H█████. Those allegations were investigated through interviews of multiple witnesses including you. In our meeting, you confirmed that you had engaged in multiple text conversations with █, mostly regarding providing her a free "buddy pass" for a flight to see her family. We discussed the fact that the monetary value of the buddy pass may have exceeded one hundred dollars. You also admitted that some of your texts to █ were inappropriate, such as referring to her as "hot". In addition, you confirmed that you have had personal conversations with █ in a one-on-one setting in your classroom, where she often stays after class to talk. You denied speaking about your personal life in those conversations, first by saying, "I don't recall" and when revisited later in the conversation by saying, "we only talk about her". █ has indicated that you have made comments to her specifically complaining about your sex life with your wife. Regardless of your intent, these actions, especially when considered, together can be interpreted as grooming-type behavior. Accordingly, you are reprimanded for your conduct and provided the following written directives moving forward:

- You are to directed to maintain appropriate and professional relationships with students at all times. This shall include refraining from physical contact with students, except when required for the safety of persons or property. It shall also include refraining from the use of vulgarities or other adult language or topics when communicating with students verbally or in writing.
- You are directed to refrain from all electronic communication with all students of EPCHS or any other primary or secondary school except through your school email account for matters directly related to the student's education or related matters. This prohibition shall only apply to students with who you are not directly related to by blood, adoption or marriage ("Unrelated Students"). Electronic communication includes phone calls, video conferencing, texting, communications utilizing social media or other web-based

**EXHIBIT A**



# East Peoria Community High School District 309
1401 E. Washington St., East Peoria, IL 61611
Phone: 309-694-8300    Fax: 309-694-8322

*Dr. Marjorie Greuter*  
*Superintendent of Schools*

*Ms. Khassandrae Brown*  
*Principal*

---

platforms including, but not limited to, Snapchat, Instagram, Twitter, Youtube, Facebook, and Facebook Messenger.

- You are directed to refrain from providing your personal contact information (address, personal phone numbers, personal social media accounts, etc.) to any Unrelated Student.
- You are directed to refrain from being alone with any Unrelated Student outside of school or a school event. You are directed from being alone with SH at any time. You are directed to refrain from being alone with any other Unrelated Student at school or a school event, except for purposes of assisting the student with school-related questions or assignments. In these circumstances, you are to be in view of the hallway with the door open.
- You are directed to refrain from providing students with any gift(s) or rewards which have more than a nominal value.
- You are directed to refer students with whom you have concerning conversations to the appropriate personnel who are trained to work with them. This would include the students' school counselor, mental health counselor, social worker, psychologist, and/or the students' parent.
- You are directed to refrain from any retaliation toward ▇ or any other person involved in this investigation.

With these safeguards in place, there is a clear expectation that there will be no further reports of inappropriate or unprofessional behavior on your part. Should you engage in any misconduct or other inappropriate behavior in the future or fail to abide by the directives in this letter, employee discipline will be imposed up to and including discharge from employment.

If you have questions concerning this letter, please contact me to make an appointment.

Sincerely,

*Marjorie Greuter*

Dr. Marjorie Greuter
Superintendent

Cc:   Laura Moore, Teresa Eberle, Union Presidents
      Personnel file