UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
PEORIA DIVISION

| | |
|---|---|
| JUSTIN YANG, | ) |
| | ) |
| Plaintiff, | ) |
| v. | ) |
| | ) Case No. 23-cv-1410 |
| J.H., KIM McCORMICK, MARJORIE | ) |
| GREUTER in her individual capacity, | ) |
| and THE BOARD OF TRUSTEES OF | ) |
| EAST PEORIA COMMUNITY | ) |
| HIGH SCHOOL DISTRICT 309, | ) |
| | ) |
| Defendants. | ) |

**ORDER**

Yang, a former public high school teacher, has brought this action against The Board of Trustees of East Peoria Community High School District 309 ("District 309"), the superintendent for District 309, and his union representative alleging § 1983 claims for violations of procedural due process under the Fourteenth Amendment. Yang also brings state law claims for defamation and intentional infliction of emotion against his former student, J.H. District 309 and J.H. have now, separately, moved to dismiss the counts against them pursuant to Federal Rule of Civil Procedure 12(b)(6). For the reasons stated below, Defendants' Motions are DENIED.

### I.   BACKGROUND[1]

Yang was formerly a tenured English Language Arts teacher at East Peoria Community High School. District 309 hired Yang in August 2017. In 2020, Yang was granted tenure after consistently receiving "above average or excellent" evaluations. . In addition to teaching, Yang also worked part-time for Allegiant Airlines.

---

[1] The following facts are taken from Yang's Second Amended Complaint, which are accepted as true for the purposes of deciding the instant motions. *See Bible v. United Student Aid Funds, Inc.*, 799 F.3d 633, 639 (7th Cir. 2015).

1

In the Fall Semester of 2022, Yang had a female student, J.H., in his first period class. In November 2022, Yang allowed J.H., with her mother's permission, to use his "buddy pass" with Allegiant Airlines to visit her brother over Thanksgiving break. J.H. gave Yang her cell phone number so he could contact her if he received notification of a flight change. By December 2022, J.H. would often ask Yang if she could stay in his classroom for second period, which they both had free. During this time, J.H. would talk to Yang about details of her home life that troubled her, and Yang tried to be supportive. As J.H.'s requests to stay after class became more frequent, Yang began to refuse her requests.

On December 7, 2022, Yang was called into District 309's superintendent Greuter's office to discuss reports J.H. made to Greuter about "inappropriate communications" between Yang and his students. The Second Amended Complaint summarized Greuter and Yang's discussion of the reported "inappropriate communications" as follows:

> a. Yang was accused of writing "Dem Sum Bitches" on the blackboard. Yang explained that in discussing stereotypes in an AP class a student had written the words and Yang erased it.
> b. Yang was accused of sending a student a GIF of a naked man. Yang said that was untrue, he had sent the student a GIF of a male wrestler based on their discussions about wrestling.
> c. Yang was accused of telling a student to "kick me in the balls." Yang admitted that he had been corrected by a transgender student several times for accidentally saying "she" instead of "he." Yang clarified he had stated for the student to kick him in the balls if he said "she" instead of "he" again.
> d. Yang was accused of inappropriate language in text messages with J.H. Yang denied the correspondence was inappropriate and expressed here was merely trying to relate and be supportive.

(D. 16, ¶ 16(a)-(d)). According to Yang, Greuter told him that she did not believe him, that his actions constituted grooming[2], and Greuter issued Yang a letter of reprimand.

---

[2] Under Illinois law, a person commits "grooming," a Class 4 felony, "when communicating with a minor in order to seduce, solicit, lure or entice the minor into engaging in sexual conduct." ECF No. 16 at ¶18 (citing 720 ILCS 5/11-25).(D. 16, ¶ 18).

2

A few days later, J.H. went to the principal with more allegations against Yang, and asked other students to make false complaints against him as well. These allegations and complaints are summarized in paragraph 21(a)–(j) of the Second Amended Complaint ("additional complaints"). Yang claims the details about these false additional complaints were not discussed with him prior to his resignation.

On December 12th, Yang went back to Greuter because J.H. had been posting on social media that he was a pedophile. *Id.* at ¶ 22. Greuter responded, "that she had heard from other students [since their last meeting] and if she knew then what she knows now, his letter of reprimand would have been a request for resignation." *Id.* Greuter did not elaborate on what she had heard, but informed Yang that "he was in serious trouble," that she "intended to speak with the District's attorney [,] and expected Yang to go before the Board for termination unless he resigned." *Id.* at ¶¶ 23–24. Greuter then met with Yang's union representative, McCormick, about the meeting that was to take place the following day.

On December 13th, Greuter informed Yang that he was suspended. McCormick then spoke to Yang privately and told him that she had spoken with Greuter and that she was not representing him regarding any potential discipline and advised him to retain a criminal attorney. *Id.* at ¶ 26. McCormick also told Yang that "he was in big trouble" and "needed to resign fast so there would be no record." *Id.* McCormick did not discuss the additional complaints against him or attempted to get Yang's side of the story. Rather, Yang claims McCormick statements to him mirrored what Greuter had said, including that "[p]arents were angry over the pedophile allegations, Yang did not want any of these allegations to become public, Yang did not want the allegations on his record, Yang was in serious trouble of a criminal nature, and his resignation needed to be completed as soon as possible." *Id.* at ¶ 29. As a result of these statements, Yang "believed a suspension and

3

hearing would lead to criminal exposure for grooming and/or sexual abuse," so when he stepped back into the meeting, he signed a letter of resignation prepared by Greuter. *Id.* at ¶¶ 30–31. Although it is not clear when, Yang also asked if his resignation could cease the investigation.

Two days later, Greuter submitted a report to the Illinois Board of Education pursuant to 105 ILCS 5/10–21.9 of the Illinois School Code, which mandates reports of instructor sexual misconduct, accusing Yang of acts of grooming. (*See* D. 16, Exh. B). Yang claims that in addition to losing his job, the false abuse allegations made against him lead to his family moving out, his wife filing for a divorce, and his contact with his children being limited and strictly supervised.

Yang's Second Amended Complaint brings claims against District 309, Greuter, and McCormick pursuant to 42 U.S.C. § 1983 for violating his due process rights (Count I, IV, and V), as well as state law claims for defamation (Count II) and intentional infliction of emotional distress (Count III) against J.H. (D. 16). District 309 moves to dismiss Count I (D. 21) and J.H. moves to dismiss Counts II and III (D. 17; D. 18) of the Second Amended Complaint under Rule 12(b)(6).

## II. LEGAL STANDARD

A Rule 12(b)(6) motion "tests whether the complaint states a claim on which relief may be granted." *Richards v. Mitcheff*, 696 F.3d 635, 637 (7th Cir. 2012); *see also* Fed. R. Civ. P. 12(b)(6). To survive a motion to dismiss for failure to state a claim, a plaintiff's complaint must contain "a short and plain statement of the claim[s] showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Under federal notice-pleading standards, a plaintiff's complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing

*Twombly*, 550 U.S. at 556). "In reviewing the sufficiency of a complaint under the plausibility standard, [courts must] accept the well pleaded facts in the complaint as true, but [they] need not accept as true legal conclusions, or threadbare recitals of the elements of a cause of action, supported by mere conclusory statements.' " *Alam v. Miller Brewing Co.*, 709 F.3d 662, 665–66 (7th Cir. 2013).

### III.    DISCUSSION

Defendants' arguments for dismissal vary by defendant. Therefore, the Court will first address the argument's raised District 309's Motion to Dismiss, and then the arguments presented in J.H.'s Motion to Dismiss.

#### A.    Count I against Defendant District 309

Invoking 42 U.S.C. § 1983, Yang alleges that District 309 violated his procedural due process rights guaranteed by the Fourteenth Amendment. Section 1983 creates a cause of action against "[e]very person, who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws." 42 U.S.C. § 1983. The Fourteenth Amendment protects against deprivations of "life, liberty, or property, without due process of law." U.S. Const. Amend XIV.

In Count I, Yang alleges District 309 deprived him of his property interest in his continued employment without due process of law by failing to inform him of the false additional complaints made against him so that he could refute them before being suspended in violation the District's Professional Personnel Policy, coerced his resignation with threats of criminal charges and investigations, and by terminating him without the benefit of any pre or post deprivation hearing.

5

(D. 16, ¶¶ 44–46). To plead such a procedural due process violation, Yang must adequately allege: (1) he had a cognizable property interest; (2) a deprivation of that property interest; and (3) a denial of due process. *Palka v. Shelton*, 623 F.3d 447, 452 (7th Cir. 2010).

District 309 has moved to dismiss Count I on the grounds that Yang voluntarily terminated his employment relationship by resigning on December 13, 2022, and, therefore, cannot state a claim for a procedural due process violation. Yang asserts that he has plead sufficient facts for the Court to find his resignation was coerced due to threats of a criminal investigation and charges from Greuter, that were later reiterated to him by McCormick. "A public employee who voluntarily resigns cannot complain about a lack of due process, but an 'involuntary' resignation may in certain circumstances form the basis of a due process claim. Two types of involuntary resignation may qualify—constructive discharge and coerced resignation." *Palka*, 623 F.3d at 453. Coerced resignation claims are "characterized by the presence of a Hobson's choice in which the employee must resign or suffer severe consequences, such as facing criminal charges." *Id.*; *see also Graehling v. Vill. of Lombard, Ill.*, 58 F.3d 295, 297–98 (7th Cir.1995) (describing a hypothetical "gun to [the plaintiff's] temple"). Furthermore, a "[c]ourt may consider an employer's exploitation of a particular employee's vulnerabilities" in determining whether he was involuntarily discharged. *See Rao v. Gondi*, 2017 WL 2445131, at *26 (N.D. Ill. June 5, 2017) (quoting *Fischer v. Avanade, Inc.*, 519 F.3d 393, 410 (7th Cir. 2008)). Alternatively, merely forcing an employee to choose between resigning or facing administrative board review does not qualify as coerced resignation. *See id.* at *25 (distinguishing *Palka*, 623 F.3d at 453).

District 309 argues that none of the allegations pertaining to comments made by Greuter suggest coercion, or that Yang was told that he would be criminally charged if he did not resign. District 309 also argues that the mere threat of a criminal investigation alone is not enough to

render a resignation involuntary, particularly where the "threat" is made by a union representative. District 309 also asserts that there are no allegations that Greuter told Yang that he could avoid criminal prosecution by resigning and that she had no authority to do so because she was required by Illinois law to report the allegations against Yang when he resigned.

In response, Yang points to his allegations that before he resigned Greuter had told him that he was in serious trouble, that she thought his actions amounted to grooming –a Class 4 felony, and that she was involving legal counsel. Additionally, the Second Amended Complaint alleges that McCormick's statements to Yang on December 13th, immediately prior to him resigning, mirrored Greuter's prior statements to him–that "[p]arents were angry over the pedophile allegations, Yang did not want any of these allegations to become public, Yang did not want the allegations on his record, Yang was in serious trouble of a criminal nature, and his resignation needed to be completed as soon as possible"–and that she had never discussed the allegations with Yang. (D. 16, ¶ 29). Yang also asked whether his resignation would end the investigation, although it is not clear whether he asked this before he resigned. There are also no allegations relating to discussions with Yang regarding the applicability of 105 ILCS 5/10-21.9, and based on the facts alleged in the Court cannot determine whether Yang should have known that it applied.

Yang's Second Amended Complaint is not a model of clarity in many ways, and the specifics leading up to his resignation are murky. However, when ruling on a Rule 12(b)(6) motion, the Court must view the facts in the light most favorable to Yang and draw all reasonable inferences in his favor. With that in mind, the Court finds Yang has met the minimal pleading requirement at this stage to provide District 309 with notice of a claim of coerced resignation. *See E.E.O.C. v. Concentra Health Servs., Inc.*, 496 F.3d 773, 779 (7th Cir. 2007) ("Rule 8(a)(2)'s 'short and plain statement of the claim' must contain a minimal level of factual detail, although

that level is indeed very minimal."). Therefore, District 309's Motion to Dismiss Count I of the Second Amended Complaint is denied.

### B.    Counts II and III against Defendant J.H.

In Counts II and III, Yang alleges defamation and intentional infliction of emotional distress claims against J.H. Under Illinois law, to state a defamation claim, a plaintiff must allege facts showing: (1) the defendant made a false statement about the plaintiff; (2) the defendant made an unprivileged publication of that statement to a third party; and (3) the publication caused damages. *Green v. Rogers*, 234 Ill.2d 478, 491 (Ill. 2009). To adequately allege intentional infliction of emotion distress claim, a plaintiff must plead that the (1) conduct involved was truly extreme and outrageous, (2) that the actor either intend that her conduct inflict severe emotional distress or know that there is at least a high probability that his conduct will cause severe emotional distress, and (3) conduct must in fact cause severe emotional distress." *Lewis v. Sch. Dist. #70*, 523 F.3d 730, 746 (7th Cir. 2008).

Here, J.H. does argue that Counts II and III fail to adequately plead the elements of defamation or intentional infliction of emotion distress. Rather, J.H. argues that they should be dismissed because Illinois law provides that students' reports of sexual misconduct, such as grooming, are afforded absolutely privilege. In support of this argument, J.H. relies heavily on *Razavi v. School of the Art Institute of Chicago*, 2018 IL App (1st) 171409 (2018), where the First District Appellate Court of Illinois, granted defendant motion to dismiss under 735 ILCS 5/2-619(a)(9), finding an absolute privilege applied barring plaintiff's defamation claims against two female college students for restatements to the school's authorities about claimed sexual assault and misconduct made during the school's investigation. In doing so, J.H. asks this Court to draw several conclusions based on the allegations in the complaint including, but not limited to, that

8

Yang's alleged statements, which he denies making, constitute grooming, that an investigation and proceedings occurred and that they were judicial or quasi-judicial in nature, that the same policies and statutes referenced in *Razavi* apply here, and that the mandatory reporting requirements for school administrations under 105 ILCS 5/22-85(c) applied and extends to students.

The Court need not linger on the merits of these arguments at this point in the proceedings. "Rule 12(b)(6) tests whether the complaint states a claim for relief, and a plaintiff may state a claim even though there is a defense to that claim." *Brownmark Films, LLC v. Comedy Partners*, 682 F.3d 687, 690 (7th Cir. 2012). Here, J.H. does not argue that Yang has not stated a claim for relief in Counts II and II, but rather relies on an Illinois appellate court case granting a motion to dismiss under 735 ILCS 5/2-619, based on an absolute immunity defense. However, unlike a Rule 12(b)(6) motion to dismiss, a § 2-619 motion "*admits the legal sufficiency of the complaint* but asserts an affirmative defense or other matter that avoids or defeats the plaintiff's claim." *Razavi*, 2018 IL App (1st) 171409, at *18 (emphasis added).

Because J.H. does not argue that the allegations in Count II and II are not legally sufficient to state claims for defamation or intentional infliction of emotional distress, the Court turns to when a Rule 12(b)(6) motion may be granted based on an affirmative defense. Generally, a plaintiff need not anticipate or negate an affirmative defense in a complaint, and "[t]he mere presence of a potential affirmative defense does not render the claim for relief invalid." *See Brownmark Films, LLC*, 682 F.3d at 690. Rather a Rule 12(b)(6) motion should only be granted if a plaintiff pleads facts apparent on the face of the complaint that show his claim is barred by the affirmative defense. *See, e.g., Tregenza v. Great Am. Commc'ns Co.*, 12 F.3d 717, 718–19 (7th Cir. 1993).

Additionally, Rule 8(c) states: "In response to a pleading, a party must affirmatively state any avoidance or affirmative defense…." Fed. R. Civ. P. 8(c); *see also Blonder-Tongue*

9

*Laboratories, Inc. v. University of Illinois Found*, 402 U.S. 313, 350 (1971) (the purpose of Rule 8(c) is to give opposing party notice of affirmative defense and opportunity to contest it). Thus, the proper way to seek a dismissal based on an affirmative defense is generally not by a motion to dismiss under Rule 12(b)(6). *See Burton v. Ghosh*, 961 F.3d 960, 965 (7th Cir. 2020). Rather, two other rules are more appropriately used to "address the situation of dismissing baseless suits…Rule 12(c) Motion for Judgment on the Pleadings and Rule 56 Motion for Summary Judgment." *Brownmark Films, LLC*, 682 F.3d at 691. Failure to follow this process deprives the plaintiff of the notice that would enable him to dispute the crucial issues of the case on equal terms.

Here, the Court finds that the allegations of the complaint do not clearly compel the conclusion that J.H.'s statements should be afforded absolute privilege. To make this determination the Court would need to rule on both questions of law and consider additional facts outside the complaint. As a result, the Court finds Counts II and III are not candidates for dismissal under Rule 12(b)(6), as J.H.'s argument regarding whether her statements should be afforded absolute privilege is premature.

## IV.   CONCLUSION

For these reasons, District 309's [21] Motion to Dismiss Count I and J.H.'s [17], [18] Motion to Dismiss Counts II and III of Plaintiff's Second Amended Complaint are DENIED. Defendants have thirty (30) days from the entry of this Order to file an answer to Plaintiff's Second Amended Complaint.

Entered on October 11, 2024.

                                                                 s/Michael M. Mihm
                                                                 Michael M. Mihm
                                                                 United States District Judge