UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
PEORIA DIVISION

| | |
|---|---|
| JUSTIN YANG,<br><br>        Plaintiff,<br><br>v.<br><br>J.H., KIM McCORMICK, MARJORIE GREUTER in her individual capacity, and THE BOARD OF TRUSTEES OF EAST PEORIA COMMUNITY HIGH SCHOOL DISTRICT 309,<br><br>        Defendants. | Case No. 1:23-cv-1410 |

## ORDER

Now before the Court is Defendant Kim McCormick's Motion to Dismiss Plaintiff Justin Yang's Amended Complaint. ECF No. 35. For the reasons stated below, McCormick's motion is **DENIED**.

### BACKGROUND[1]

Yang was formerly a tenured English Language Arts teacher at East Peoria Community High School. District 309 hired Yang in August 2017. In 2020, Yang was granted tenure after consistently receiving "above average or excellent" evaluations. In addition to teaching, Yang also worked part-time for Allegiant Airlines.

In the Fall Semester of 2022, Yang had a female student, J.H., in his first period class. In November 2022, Yang allowed J.H., with her mother's permission, to use his "buddy pass" with Allegiant Airlines to visit her brother over Thanksgiving break. J.H. gave Yang her cell phone number so he could contact her if he received notification of a flight change. By December 2022,

---

[1] The following facts are taken from Yang's Second Amended Complaint, which are accepted as true for the purposes of deciding the instant motions. *See Bible v. United Student Aid Funds, Inc.*, 799 F.3d 633, 639 (7th Cir. 2015).

J.H. would often ask Yang if she could stay in his classroom for second period, which they both had free. During this time, J.H. would talk to Yang about details of her home life that troubled her, and Yang tried to be supportive. As J.H.'s requests to stay after class became more frequent, Yang began to refuse her requests.

On December 7, 2022, Yang was called into District 309's superintendent Greuter's office to discuss reports J.H. made to Greuter about "inappropriate communications" between Yang and his students. The Second Amended Complaint summarized Greuter and Yang's discussion of the reported "inappropriate communications" as follows:

a. Yang was accused of writing "Dem Sum Bitches" on the blackboard. Yang explained that in discussing stereotypes in an AP class a student had written the words and Yang erased it.

b. Yang was accused of sending a student a GIF of a naked man. Yang said that was untrue, he had sent the student a GIF of a male wrestler based on their discussions about wrestling.

c. Yang was accused of telling a student to "kick me in the balls." Yang admitted that he had been corrected by a transgender student several times for accidentally saying "she" instead of "he." Yang clarified he had stated for the student to kick him in the balls if he said "she" instead of "he" again.

d. Yang was accused of inappropriate language in text messages with J.H. Yang denied the correspondence was inappropriate and expressed here was merely trying to relate and be supportive.

(ECF No. 16, ¶ 16(a)-(d)). According to Yang, Greuter told him that she did not believe him, that his actions constituted grooming, and Greuter issued Yang a letter of reprimand.

A few days later, J.H. went to the principal with more allegations against Yang, and asked other students to make false complaints against him as well. These allegations and complaints are summarized in paragraph 21(a)–(j) of the Second Amended Complaint ("additional complaints"). Yang claims the details about these false additional complaints were not discussed with him prior to his resignation.

On December 12th, Yang went back to Greuter because J.H. had been posting on social media that he was a pedophile. *Id.* at ¶ 22. Greuter responded, "that she had heard from other students [since their last meeting] and if she had known then what she knows now, his letter of reprimand would have been a request for resignation." *Id.* Greuter did not elaborate on what she had heard, but informed Yang that "he was in serious trouble," that she "intended to speak with the District's attorney [,] and expected Yang to go before the Board for termination unless he resigned." *Id.* at ¶¶ 23–24. Greuter then met with Yang's union representative, McCormick, about the meeting that was to take place the following day.

On December 13th, Greuter informed Yang that he was suspended. McCormick then spoke to Yang privately and told him that she had spoken with Greuter and that she was not representing him regarding any potential discipline and advised him to retain a criminal attorney. *Id.* at ¶ 26. McCormick also told Yang that "he was in big trouble" and "needed to resign fast so there would be no record." *Id.* McCormick did not discuss the additional complaints against him or attempted to get Yang's side of the story. Rather, Yang claims McCormick statements to him mirrored what Greuter had said, including that "[p]arents were angry over the pedophile allegations, Yang did not want any of these allegations to become public, Yang did not want the allegations on his record, Yang was in serious trouble of a criminal nature, and his resignation needed to be completed as soon as possible." *Id.* at ¶ 29. As a result of these statements, Yang "believed a suspension and hearing would lead to criminal exposure for grooming and/or sexual abuse," so when he stepped back into the meeting, he signed a letter of resignation prepared by Greuter. *Id.* at ¶¶ 30–31. Although it is not clear when, Yang also asked if his resignation could cease the investigation.

Two days later, Greuter submitted a report to the Illinois Board of Education pursuant to 105 ILCS 5/10–21.9 of the Illinois School Code, which mandates reports of instructor sexual

3

misconduct, accusing Yang of acts of grooming. (*See* ECF No. 16, Ex. B). Yang claims that in addition to losing his job, the false abuse allegations made against him led to his family moving out, his wife filing for a divorce, and his contact with his children being limited and strictly supervised.

Yang's Second Amended Complaint brings claims against District 309, Greuter, and McCormick pursuant to 42 U.S.C. § 1983 for violating his due process rights (Count I, IV, and V), as well as state law claims for defamation (Count II) and intentional infliction of emotional distress (Count III) against J.H. (D. 16). Defendant McCormick then filed her Motion to Dismiss Count V of the Second Amended Complaint under Rule 12(b)(6).

## LEGAL STANDARD

A Rule 12(b)(6) motion "tests whether the complaint states a claim on which relief may be granted." *Richards v. Mitcheff*, 696 F.3d 635, 637 (7th Cir. 2012); *see also* Fed. R. Civ. P. 12(b)(6). To survive a motion to dismiss for failure to state a claim, a plaintiff's complaint must contain "a short and plain statement of the claim[s] showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Under federal notice-pleading standards, a plaintiff's complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "In reviewing the sufficiency of a complaint under the plausibility standard, [courts must] accept the well pleaded facts in the complaint as true, but [they] need not accept as true legal conclusions, or threadbare recitals of the elements of a cause of action,

4

supported by mere conclusory statements.'" *Alam v. Miller Brewing Co.*, 709 F.3d 662, 665–66 (7th Cir. 2013).

## DISCUSSION

Now turning to the pending motion, McCormick seeks to dismiss Count V of Yang's Complaint for failure to state a claim. At the outset, the Court must first address Yang's argument that the Court's October 11, 2024, Order, under the law of the case doctrine, adequately resolves McCormick's Motion to Dismiss. "The doctrine of law of the case is a rule of practice under which a 'decision on an issue of law made at one stage of a case becomes a binding precedent to be followed in successive stages of the same litigation.'" *Roboserve, Inc. v. Kato Kagaku Co.*, 121 F.3d 1027, 1031 (7th Cir.1997) (citation omitted). However, McCormick advances new issues concerning § 1983 claims against a private individual that were not raised in the Court's October 11 Order. As such, the Court declines to apply the law of the case doctrine and will address the arguments made in McCormick's brief below.

To sufficiently plead a violation of due process under § 1983, a plaintiff must allege enough facts to show (1) the deprivation of a right secured by the Constitution or federal law and (2) that defendants were acting under color of state law. *Wilson v. Warren Cnty. Ill.*, 830 F.3d 464, 468 (7th Cir. 2016). Actions taken under color of state law often involve a "misuse of power, possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law." *Wilson v. Price*, 624 F.3d 389, 392 (7th Cir. 2010). For a private actor to be held liable, the plaintiff must also show that there was a "meeting of the minds" and "'thus reached an understanding' with a state actor to deny plaintiff a constitutional right." *Id.* (quoting *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158 (1970)). McCormick first argues that the only way she can be held liable under § 1983 is if she has engaged in a concerted effort to deprive Yang of his

5

constitutional rights. At the motion to dismiss stage, a plaintiff need only allege sufficient facts that "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. Here, Yang's Amended Complaint states that "Greuter and McCormick had an implied or express agreement to deprive Yang of the opportunity to refute the allegations against him before being suspended in violation of the District's Professional Personnel policy 5:240 and to coerce his resignation to deprive Yang of his Fourteenth Amendment rights." ECF No. 16 at ¶ 80.

"[M]ere allegations of joint action or a conspiracy do not demonstrate that the defendants acted under color of law and are not sufficient to survive a motion to dismiss." *Fries v. Helsper*, 146 F.3d 452, 457 (7th Cir.1998). Despite this, Yang alleges that the specific meeting of the minds took place the day before Yang resigned when Greuter and McCormick were in communication. ECF No. 16 at ¶ 81. Yang claims that their statements were nearly identical, and that McCormick already had an understanding with Greuter to impress that criminal charges were coming. *Id.* Therefore, the Court finds that at this stage of the litigation, Yang has sufficiently plead facts to plausibly state that there was a "meeting of the minds."

Next, McCormick argues that Yang has failed to sufficiently pled that he was deprived of a property interest. A property interest in continued employment "can be created in one of two ways, 1) by an independent source such as state law securing certain benefits; or 2) by a clearly implied promise of continued employment." *Phelan v. City of Chicago,* 347 F.3d 679, 681 (7th Cir.2003) (internal quotation marks omitted). McCormick agrees that Yang had a property interest under Illinois law in continued employment as a tenured teacher. Where McCormick takes issue is whether Yang has sufficiently pled a depravation because he resigned. Typically, a "public employee who voluntarily resigns cannot complain about a lack of due process, but an 'involuntary' resignation may in certain circumstances form the basis of a due process claim. Two

types of involuntary resignation may qualify—constructive discharge and coerced resignation." *Palka*, 623 F.3d at 453.

A resignation is deemed to be involuntary when the former employee demonstrates that (1) he or she involuntarily accepted the terms of his or her employer, (2) circumstances permitted no other alternative, and (3) the circumstances were the result of coercive acts of the employer. *Walsh v. Chicago*, 712 F. Supp. 1303, 1308 (N.D. Ill. 1989) (quoting *Fruhauf Southwest Garment Co. v. United States*, 111 F. Supp. 945 (1953)).

In his Amended Complaint, Yang pleads that Greuter and McCormick used coercion to deprive him of his property interest because he involuntarily resigned. Specifically, Yang claims that McCormick expressed that he was in "big trouble and needed to resign fast." ECF No 16 at ¶ 26. Yang also pleads that she would not represent him in any potential criminal trial and that he "needed to get a criminal attorney." *Id.* Viewing the facts in the light most favorable to Yang, it is plausible that the circumstances of his meeting with McCormack permitted him no alternative other than resigning to avoid criminal prosecution. *See Graehling v. Vill. of Lombard, Ill.*, 58 F.3d 295, 297–98 (7th Cir.1995) (describing a hypothetical "gun to [the plaintiff's] temple"). Based on this discussion, Yang claims that he did not want any of the allegations to become public or face criminal repercussions. At this stage, it would likely be inappropriate to determine that Yang was not coerced absent any additional facts. Therefore, taking the plaintiff's facts as true, Yang has pled enough to claim that he was deprived of a property right.

Finally, McCormick argues that Count V must fail because Yang had an adequate post-deprivation remedy and failed to avail himself of the procedures set under the Illinois Educational Labor Relations Act (IELRA), 115 ILCS 5/14(b)(1). However, Yang does not allege that the state procedures were inadequate; instead, he argues that he was completely deprived of the pre-

termination process due to the coercive acts of the Defendants. McCormick relies on *Parratt v. Taylor* for the position that the deprivation of Yang's employment was "random and not alleged to be a standard procedure." *See* 451 U.S. 527 (1981). However, in *Parratt* the Court rejected the defendant's due process claim because providing a pre-deprivation hearing was impractical due to the "random and unauthorized" acts of prison officials. The Seventh Circuit has held that *Parratt* "excuses § 1983 liability for a lack of due process when (1) the deprivation is caused by the random and unauthorized act of a government employee rather than by an established state procedure, and (2) a meaningful post-deprivation remedy is available." *Luster v. Vill. of Ashmore*, 76 F.4th 535, 537 (7th Cir. 2023).

Here, unlike the defendant in *Parratt*, Yang does not allege that his termination was the result of spontaneous actions on behalf of Defendants. The events that led up to Yang's resignation do not come across as unauthorized or random. Superintendent Greuter issued a letter of reprimand to Yang after the first set of allegations arose. ECF No. ¶ 19. A few days later, Yang had a follow-up meeting with Greuter after a second set of allegations was brought to her attention. *Id.* at ¶¶ 21–23. Additionally, a letter from Greuter to the Regional Superintendent details the investigation into Yang's conduct and resignation. ECF No. 16, Ex. A. McCormick's argument that the alleged depravation was not standard procedure is unpersuasive given the thorough documentation and meetings prior to Yang's resignation. Thus, McCormick's argument that Yang was adequately provided a post-deprivation remedy fails.

## CONCLUSION

For these reasons, McCormick's Motion to Dismiss Count V of Yang's Second Amended Complaint is **DENIED**. Defendant has thirty (30) days from the entry of this Order to file an answer to Plaintiff's Second Amended Complaint

Entered on April 9, 2025.

s/ *Michael M. Mihm*
Michael M. Mihm
United States District Judge